Turner, et al., v. Hall.

MARY E. TURNER, BY HER NEXT FRIEND, *et al.*, Respondents, *vs.* JOHN A. HALL, Appellant.

1. *Limitations, statute of—Adverse possession, what necessary to defeat an action of ejectment.*—Adverse possession. in order to defeat an action of ejectment, must be, for ten years prior to the institution of the suit, an open, notorious and continuous occupancy of the land, or some part thereof, under color of title to the whole, and must be taken in good faith, under a claim adverse to plaintiff and those from whom he derives title.

2. *Color of title, deeds relied on to show should be taken in good faith—Instructions as to color of title.*—The question whether deeds relied on as color of title were taken in good faith is rightly submitted to the jury. And they should be particularly told what constitutes color of title.

3. *Adverse possession—Acts to establish may be determined in part from character of the land—What sufficient.*—In determining the question of adverse possession, the jury may take into consideration the nature and situation of the land. And the placing of deeds on record, passing over the tract, employment of agents living in the neighborhood to look after it and prevent trespasses upon it, payment of taxes continuously under claim of title, and the like, may be considered by them; and it is not always necessary to prove actual occupation by the claimant; but the acts referred to would not be sufficient of themselves to establish title by reason of adverse possession, unless the land was unsusceptible of more definite and actual possession, or such acts were known to the party holding the legal title, and known to have been done under claim of adverse title.

4. *Adverse possession, constructive—Recent decisions as to.*—The later decisions of this court manifest no disposition to multiply those evidences of adverse possession which tend to give it a constructive character.

## *Appeal from Nodaway. Circuit Court.*

*Heren & Rea*, for Appellant.

*Dawson & Edwards*, for Respondents.

HOUGH, Judge, delivered the opinion of the court.

This was an action of ejectment, commenced in 1872, to recover a tract of land in Nodaway county.

In 1849, Benjamin Holland, who lived in Kentucky, entered through his son, Perry Holland, who lived in Nodaway county, Missouri, the land in controversy, and on the 2nd day of October, 1854, a patent issued from the United States to Benjamin Holland for said land.

In 1848, Perry Holland married Letha J. Dinning, and in 1849, a son was born to them, named William B. Holland.

Perry Holland died in 1859, and his widow, in 1865, married William G. Turner, and in 1867, a daughter was born to them named Mary Elizabeth Turner.

On the 28th of December, 1870, Benjamin Holland conveyed the land sued for to his grandson, William B. Holland.

In 1871, William B. Holland died intestate and without issue, leaving his mother, Letha J. Turner, and his sister of the half blood, Mary Elizabeth Turner, as his only heirs, and they, together with William G. Turner, husband of Letha J. Turner, are the plaintiffs in the present action.

The defendant pleaded an adverse possession by himself and his grantors, under color of title, for the statutory period, and introduced in evidence, a warranty deed from Perry Holland and his wife to Prince L. Hudgins, dated April 25th, 1850, and recorded April 23rd, 1855 ; also, a warranty deed from Prince L. Hudgins and wife to Jeremiah Hall, dated September, 21st, 1860 ; also, a warranty deed from Jeremiah Hall to John Hall and Harvey D. Hall, dated October 3rd, 1867, and a deed from Harvey D. Hall and wife to John A. Hall, the defendant, dated February 3rd, 1872. There seems to be a mistake, in the deed from Holland to Hudgins, in the description of part of the land ; but, under the view we take of the case, it is of no moment. The remaining deeds correctly describe the land sued for.

There was testimony to show that in 1850, and soon after the conveyance to him, Hudgins took possession of the land and put a tenant thereon, who cultivated between twenty and thirty acres, that being the amount inclosed, and remained there until the spring of 1851. From 1852 until 1866, no person lived upon the land, nor was it cultivated or inclosed, or used or occupied in any way. In the year 1855, Hudgins, who did not live in Nodaway county, employed a person who lived in the neighborhood of the land, as his agent, to look after it, protect it against trespassers and make sale of it. This agent testified that he acted for Hudgins, and it appears that he ne-

gotiated the sale to Jeremiah Hall; but what the extent, character and publicity of the supervision exercised by him over the land, were, this record does not disclose. Soon after Jeremiah Hall purchased the land, he requested a neighbor to look after it and prevent any trespass thereon. Jeremiah, John A. and Harvey D. Hall paid taxes on the land from 1860 until 1873, except for the year 1863. Benjamin Holland paid taxes for a year or two after the land was entered, and in the year 1866 it seems to have been assessed to him. From 1860 to 1862 it was assessed to Hall; for the year 1862 to unknown owner; for the year, 1863, 1864 and 1865 to Hall. There is nothing in the record to show that the conveyance from Hudgins to Holland and the subsequent conveyances in the defendants' claim of title, were recorded, though it is so stated in appellant's brief.

In the fall of 1866, John Hall went upon the land, built a two-story dwelling, stable and blacksmith shop, and made other valuable and permanent improvements, and continued in possession until the institution of this suit.

There was testimony to show that Hudgins and the Halls, took their conveyances with full knowledge that Benjamin Holland owned the land and had a patent therefor.

Hudgins died in 1872 and this cause was not tried until 1874.

An attempt was made to impeach the genuineness of the deed to Hudgins by Mrs. Turner. On cross-examination, she stated that her signature to the deed looked like her signature to a letter of hers exhibited to her; that she had no recollection of having signed the deed, though she may have done so; that the name of her husband did not seem to be in his handwriting.

She further stated that Hudgins and her husband had dealings with each other, and that Hudgins defended her husband, in 1849, in a criminal prosecution against him.

Numerous instructions were asked and given, and there was a verdict and judgment for the plaintiff, from which the defendant appealed to this court.

The question of the estoppel of Letha J. Turner and Mary Elizabeth Turner, to assert any title to the land in controversy in consequence of the covenants contained in the deed from Perry Holland and wife to Prince L. Hudgins, was attempted to be raised by the defendant's answer. This plea was very imperfectly drawn and need not be further noticed, as William B. Holland, under whom plaintiffs claim, did not derive his title from Perry Holland, and there was neither allegation nor proof of any assets having descended to him from his father.

During the progress of the trial, a letter was offered in evidence, written by Mrs. Letha J. Holland to one Peatree, in the year 1850, but subsequent to the date of the conveyance made by her husband and herself to Hudgins, which contained nothing of consequence, save a reference to a letter inclosed therein, which she there stated was from Benjamin Holland and which she wished to have shown to Mr. Hudgins.

A letter dated November 1st, 1850, signed "Thos. H. and Benjamin Holland" was offered at the same time, as being the letter referred to in Mrs. Holland's letter, in which a willingness was expressed to make a deed to Perry Holland or to Hudgins for the land, and which spoke of the land as Perry's land. Both these letters were excluded, and the defendant excepted. Benjamin Holland's deed to William B. Holland offered in evidence, was signed with his mark and his deposition in the cause was similarly attested. There was no testimony that the letter or the signatures were in the handwriting of either Benjamin Holland or Thomas F. Holland. The only testimony as to the authenticity of the letter was, that it was found among the papers of Prince Hudgins after his death, but not inclosed in Mrs Holland's letter. Mrs. Turner, formerly Mrs. Holland, testified that it was not in the writing of Thomas F. Holland, and that she did not recognize it as the letter inclosed by her.

Peatree, who delivered to Hudgins the letter from Mrs. Holland and the letter she inclosed, also failed to identify it, and stated that it was not the letter received and delivered by

him. The defendant having failed to make a *prima facie* case as to the authenticity of the letter, the court could not do otherwise than exclude it. This letter having been properly excluded, the letter of Mrs. Holland is of no importance.

The only point remaining to be considered is as to the propriety of the instructions given by the court on the question of adverse possession. The character of the possession to be taken and held by one claiming land under color of title, in order to bar the rights of the true owner, has not been defined with any great degree of precision. From the necessities of the case and the nature of the subject, it has always been treated, when abstractly discussed, in very general terms. Each case must, in a large measure, depend on its own peculiar circumstances. Under the decision of this court in the case of Draper vs. Shoot, (25 Mo., 197,) actual occupation is not always indispensable. But then its absence, it would seem, should be supplied by some act done, on or about the land, which would give some notice of an adverse claim. It would be a new and dangerous doctrine, to hold that a possession under color of title, may be discontinued after a year, or a month, or a week, and that, thereafter, the constructive *possession of the* land would follow the color of title instead of the true title, provided the disseizor *did not intend*, in withdrawing from the actual possession, to give up all claim to the land; although no vestige of such adverse occupancy remained upon the land, and no act was thereafter done, save the payment of taxes, of a character calculated to give notice to the true owner of an adverse claim. Such, we understand, is the position assumed by appellants' counsel in argument. We cannot indorse it. The only actual possession taken or held, in this case, by Hudgins, was in 1850 and 1851, prior to the emanation of the patent from the United States, which was in 1854. The actual occupancy, it is claimed by the respondents, cannot, under the decision in the case of Gibson vs. Chouteau, (13 Wall., 92,) be taken in consideration, in ascertaining the character and extent of the adverse possession, avail-

able to the defendant, in this action.   It will not be necessary to say anything upon this point, as the possession of Hudgins during that time was not excluded from the consideration of the jury.

The instructions given by the court at the instance of the plaintiffs, were substantially correct.   They declared in effect that the plaintiffs were entitled to recover, unless the jury found that the defendant, and those under whom he claimed title to the premises, had been for a period of ten years prior to the institution of this suit, in the open, notorious and continuous possession thereof, or of some part thereof under color of title to the whole, taken in good faith, claiming the same adversely to the plaintiffs, and those from whom they derived their title.

The instruction given as to color of title, is not entirely free from objection, as to form—some question having been made as before stated as to the genuineness of the deed from Holland and wife to Hudgins.   The jury were told in substance, that unless Hudgins believed said deed to be genuine, it did not constitute color of title.   This was instructing the jury, by way of inference, as to what constituted color of title. They should have been more pointedly instructed as to that matter, but as no objection is made here on this account, and counsel do not claim that the jury were misled thereby, we do not feel that we would be warranted in reversing the judgment for this defect.   The question of the good faith of the defendant, and those under whom he claimed, in taking the conveyances relied upon as color of title, was properly submitted to the jury.

The court of its own motion gave the following instruction :

" To make good the defense of the defendant under the statute of limitations, or claim of adverse possession, the jury must find that the defendant, or those under whom he claims, themselves, or by their agents or tenants, had actual, continuous, visible possession of the land in controversy, under color of title to the whole, claiming the same adversely to the plaintiffs and those under whom they claim title, for ten years next before the commencement of this suit,

or for a period of ten years continuously at some period before the commencement of this suit. This possession is not constructive, but it must have been by occupation or cultivation, if the lands were adapted to or susceptible of cultivation, or by other acts of ownership upon and in relation to said land, which were visible, notorious and continuous for the period of ten years, such as that if the true owner had visited said land, he would have been advised thereby of the claim and possession of the same. The fact that those under whom the defendant claims, may have put deeds upon record, passed over the land, and employed agents in the neighborhood to look after it and prevent trespasses upon it, and paid the taxes upon it continuously, under claim of title to the land, are proper to be considered by the jury, in determining the question of possession and ownership; but these facts would not, of themselves, be sufficient to invest the title in the defendant under the claim of adverse possession, unless the land was not susceptible of a more definite and actual possession, or unless such acts and claim of ownership were known to the party holding the legal title, and known by him to have been so done under a claim of title adverse to his right or title."

The following instruction was given at the request of the defendant:

"It is not necessary in all cases to the setting up of adverse possession, and the running of the statute of limitations, that there need be a fence, building, or other improvement made; and it suffices for this purpose, that visible and notorious acts of ownership are exercised over the lands in controversy, for ten years or more, with the knowledge of an adverse claimant, without interruption or an adverse entry by him; such acts are evidence of an ouster of a former owner, and an actual adverse possession against him, provided the jury should think that the property was not susceptible of a more strict or definite possession than had been taken and held; that neither actual occupation, cultivation or residence

are necessary, where the property is so situated as not to admit of any permanent, useful improvement, and the continued claim of the party has been evidenced by public acts of ownership, such as he would exercise over property which he claimed in his own right, and would not exercise over property which he did not claim. The jury, in determining adverse possession, may take into consideration the nature and situation of the land, and in determining that question, the assessment of the land, the payment of taxes by the person asserting title by adverse possession, and the long acquiescence of parties asserting title, with knowledge or notice of claims or acts of ownership being asserted by other parties, are facts that may, with other circumstances, be considered by the jury."

These instructions are liable to some verbal criticism, but when taken in connection with the instructions given for the plaintiffs, their meaning is sufficiently plain, and they are certainly, exceedingly favorable to the defendant. They recognize to the fullest extent the most liberal views that have ever been expressed by this court, on the subject of adverse possession. The later decisions of this court certainly manifest no disposition to multiply those evidences of adverse possession, which tend to give it a constructive character.

We cannot see that any error has been committed against the defendant in giving and refusing instructions.

The judgment will therefore be affirmed. All the judges concur, except Judge Sherwood, who is absent.