Brown v. Hartford.

---

BROWN et al., Appellants, v. HARTFORD et al.

Division One, March 18, 1903.

1. **Ejectment**: FINDING FOR PLAINTIFF: NO APPEAL.  Where the jury find for plaintiff for a part of the land sued for in ejectment and defendant does not appeal, no consideration will be given on appeal to the right of either party to that part.

2. ———: TAX DEED: VOID ON FACE.  A tax deed, reciting on its face that the collector had "advertised said real estate for sale according to law" and no more, is void on its face, since such recital is a mere conclusion of law and not a recital of the statutory requirements necessary to give validity to the instrument.

3. ———: ———: ASSESSED AGAINST OWNER.  A tax deed, made in pursuance of an assessment against one who is not by the records shown to be the owner at the time, is void.

4. ———: LIMITATIONS: POSSESSION MUST BE CONTINUOUS.  In order to acquire title by limitations, the adverse possession must be continuous for ten full consecutive years.  A possession for fourteen years, unless such possession was continuous and unbroken for one period of ten full years, does not give title.

5. ———: ———: VOID TAX DEED: COLOR.  A void tax deed, under which the grantee entered into possession, makes the possession of a part of the contiguous body of land therein described, possession of the whole.  But in order for such possession to ripen into title by limitation it must have been visible, continuous and uninterrupted for ten full years.  If the grantee under the void tax deed, before his adverse possession has been continuous for ten years, tears down his cabin, removes the fences and other improvements and abandons the possession for a few years, and then again enters into possession, his acts of ownership are not sufficient to constitute uninterrupted adverse possession.

6. ———: ———: ———: PEREMPTORY INSTRUCTION FOR PLAINTIFF. Where plaintiff shows an unbroken record title, and defendant shows only a void tax deed and a continuous .possession of less than ten years, the court should give a peremptory instruction to find for plaintiff.

Appeal from DeKalb Circuit Court.—*Hon. A. D. Burnes,* Judge.

REVERSED AND REMANDED.

*John E. Dolman* and *W. H. Haynes* for appellants.

(1)   We can form no opinion as to the theory upon which plaintiffs' instruction for a verdict was refused or defendants' instructions authorizing the jury to find that they had acquired title by adverse possession were given.   The defense is an affirmative one, and unless there is evidence in the record tending to show that their possession has been continuous and uninterrupted during some one period of ten years, the verdict can not be sustained.   Hucksham v. Hartwig, 81 Mo. 648; Bowman v. Lee, 48 Mo. 335; Harrison v. Cachelin, 23 Mo. 117.   And the wrongful possession of the disseizor will not be presumed to continue, but the fact that it is uninterrupted must be affirmatively shown. Lynde v. Williams, 68 Mo. 670.   (2)   If defendants had cut wood and poles on the land from time to time as detailed in Carp's evidence, during every year from 1876 till 1893 when Hartford began to fence it, it would not help them.   He testifies that thirty or forty acres of it was susceptible of cultivation, that his father and others cultivated from three to five. acres during the six years from the fall of 1870 until the fall of 1876, when it was abandoned; that it was entirely cleared of timber when his father went on it, and defendant Hartford leased and fenced it for pasture in 1893.   ''Mere payment of taxes, cutting timber and protecting the land by driving off trespassers'' is not actual possession such as is required to divest the true

owner of his title.    Cantlin v. Land & Lumber Co., 151
Mo. 159; Swearingen v. St. Louis, 151 Mo. 348; Pharis
v. Jones, 122 Mo. 125; Nye v. Alfter, 127 Mo. 529; Car-
ter v. Homback, 139 Mo. 245; Norfleet v. Hutchins,
68 Mo. 597; Cook v. Farrah, 105 Mo. 492; Bar v. Potter
(Ky.), 57 S. W. 478.    (3)  The tax deed to Conley was
made under the provisions of General Statutes 1865,
chapter 13, section 12.    One of the manifest imperfec-
tions of this deed is that it makes no mention of the
notice of the application for judgment, and no mention
of the notice of sale except that the collector "adver-
tised said real estate for sale according to law."  . The
same defect was held fatal by this court in Cook v.
Farrah, 105 Mo. 501; Loring v. Groomer, 142 Mo. 1;
Burden v. Taylor, 124 Mo. 21; Moore v. Harris, 91 Mo.
616.

*Hewitt & Blair* for respondents.

(1)  If a claimant dies in possession before the
title becomes perfect, a continued like possession of the
heirs will perfect it.    Fugate v. Pierce, 49 Mo. 447;
St. Louis v. Gorman, 29 Mo. 604.    (2)  Merely leav-
ing the land after the improvements have been de-
stroyed, *animo revertendi*, is not an abandonment.
Fugate v. Pierce, 49 Mo. 450.    (3)  Where on the trial
in a suit at law there is a conflict of evidence, this court
is bound by the verdict of the jury.    Redman v.
Adams, 165 Mo. 72; Hafner v. St. Louis, 161 Mo. 41;
Bartlett v. Kauder, 97 Mo. 356.    (4)  A less weight
of evidence is necessary to support the claim of title
by adverse possession where the entry is with color
of title than where it is not.    Draper v. Shoot, 25 Mo.
202.    The appellate court in determining whether the
evidence is sufficient to support a verdict will, laying
aside controverting evidence, assume that the evidence
is true, and will give to it every favorable inference
which may be reasonably drawn from it.    James v.

Life Ass'n, 148 Mo. 16.    (5)   It is not enough that there is an insufficiency of evidence; a case will not be reversed on the ground of lack of evidence unless there is no evidence tending to establish the facts found by the jury.   James v. Life Ass'n, supra; Smith v. Royse, 165 Mo. 658.    (6)   "Much depends upon the nature and situation of the property, the uses to which it can be applied, or to which the owner or claimant may choose to apply it.   Neither actual occupation, cultivation or residence are necessary where the property is so situated as not to admit of permanent or useful improvement, and the claim has been evidenced by continued public acts of ownership, such as the claimant would exercise over (similar) property which he claimed in his own right and would not exercise over property he did not claim."   Draper v. Shoot, 25 Mo. 203; Leeper v. Baker, 68 Mo. 406; Benne v. Miller, 149 Mo. 237.   (7)   If the record owner have actual knowledge of the adverse claim, openness and notoriety become unimportant.   Dausch v. Crane, 109 Mo. 337.

*Wm. Henry* also for respondents.

(1)   If defendants had any possession at all in this case it was adverse.   Comstock v. Eastwood, 108 Mo. 47.    (2)   It is not necessary that the possession be open and notorious in cases where the real owner has actual knowledge that the possession is under claim of right.   Allen v. Mansfield, 108 Mo. 350.    (3) Possession is simply dominion or control by a person indicating an intent to use the property for himself. DeGraw v. Prior, 53 Mo. 316; Pacific Express Co. v. Tyler O. F. Co., 72 Mo. App. 154.

MARSHALL, J.—Ejectment for the west half of the northeast quarter of section 33, township 58, range 30, in DeKalb county.   The suit was instituted August 3, 1898, and the ouster laid as of March 1, 1895.

Originally, Hartford was the sole defendant, but he disclaimed and pleaded that he went into possession as the tenant of John and Rufus Carp, who claim to own the land, and thereupon they were brought in as co-defendants, and filed a general denial. By direction of the court the jury found for the plaintiffs for the north forty, and as the defendants did not except to or appeal from the ruling in this regard, the north forty will not be further considered here.

The plaintiffs showed an unbroken chain of title from the patent of the United States, dated May 1, 1843, to themselves, and in addition, a tax title dated June 1, 1882, for taxes, as to the south forty, for the years 1870, 1873, '4, '5 and '6.

The defendants introduced a tax title, dated May 27, 1868, for taxes for the year 1863, from the collector to J. B. Conley; a quitclaim deed from J. B. Conley to George Conley, dated April 11, 1870; a quitclaim deed from George Conley to B. F. Chisham, dated June 17, 1870, conveying the south forty; and a quitclaim deed from B. F. Chisham to Daniel Carp, dated July 14, 1870, conveying the south forty. The defend-.ants are the sons of Daniel Carp, who lived on the land, from July, 1870, when he purchased it, until September 13, 1872, when he died. The defendants also claim title by limitation. The testimony shows that the land is most rough, poor land, with deep ravines and steep, rocky bluffs; that it was entirely denuded of timber by the Hannibal & St. Joseph railroad, the former owner, for cross-ties, etc., used in the construction of its road in the winter of 1868; that a growth of small oak trees has since sprung up on the land, suitable only for fence posts and firewood; that Daniel Carp cleared and cultivated between three and five acres of the land, and lived on it in a cabin that was originally built by the wood-choppers who cut the timber for the railroad while it owned it; that when Daniel Carp died, he told his son John, one of the defendants herein, to

stay there. and take care of the family; that John remained there about a year and a half, and finding he could not make a living there, he rented other farms in the neighborhood; that he rented the land in controversy to William Moore and Jesse Whittaker, who stayed a year; then it was rented for a year to a man named Zercher; then it was rented to Bloom Reed; then to George Estes; then to a man named Judd, who stayed part of one summer; then some one tore down the cabin that was on the place—there is some evidence that the defendant did it and sold the timber. During the years from 1872 to 1879 or 1880 the defendant, John Carp, who seems to have managed the affair for the defendants, rented various farms in the neighborhood of this land, and claims that when this land was not rented he used it in connection with the various farms he lived on, cut fence posts and firewood off of it, and sold timber that he cut from the land, and that he piled up the brush so as to let the grass grow and make the land available for pasturage. In 1879 or 1880, John moved to the edge of Caldwell county, and stayed there for two years, during which time no one seems to have been in the possession of the land. Then John moved back to a farm in the neighborhood and says he again used the land to get fence posts and firewood therefrom. He remained a year, and then moved to another farm about two miles from this land and his brother and brother-in-law got wood and posts from the land. From 1884 to 1890 John appears to have lived on the Smith place which was about two miles from this land. In 1888 he leased it to Jack Curtis. In 1890 he moved to Caldwell county, about six miles from this land. In 1892 he leased it to defendant Hartford for five years, and he put up fences around the land, and has been in possession ever since. The defendants showed that they or those under whom they claim or who hold under them, paid the taxes for the years 1872, 1878, 1879, 1880, 1891, 1894, 1895, 1896, 1897 and 1898. The plain-

tiffs showed that they had paid the taxes for the years 1892 and 1893.

In April, 1885, defendant Rufus Carp wrote to plaintiff Putnam about some land. The letter is not in the record, so it is not clear what land it referred to. Putnam answered saying if Carp referred to the land in controversy here, he (Putnam) owned it and Carp had no claim on it, but he would sell it to him for $1,440.

The tax deed from the collector to J. B. Conley, dated May 27, 1868 (under which the defendants claim), recited that the land was assessed to John Duff, and that the collector had "advertised said real estate for sale according to law to pay and satisfy said taxes and the penalties."

## I.

The tax deed to Conley was void on its face, because it contained no recitals showing that all the statutory requirements had been complied with. The statement in the deed that the collector had "advertised said real estate for sale according to law," was a mere conclusion of the collector and not a recital of the statutory requirements which were necessary to give validity to the deed. [Burden v. Taylor, 124 Mo. l. c. 21; Loring v. Groomer, 142 Mo. l. c. 8.]

In addition to this, the land was assessed to John Duff, who never had any title whatever to the land. At the time of the assessment and sale the title was shown by the records to be fully vested in John L. Lathrop.

Therefore, that tax deed was insufficient to pass any title to Conley, and the defendants who claim under him got no title from him.

## II.

The defendants, however, claim title by limitation, and invoke the Conley tax deed as color of title.

The defendants' father held under a quitclaim deed from Chisham dated July 14, 1870, and Chisham held under a quitclaim deed from George Conley, who held under a quitclaim deed from J. B. Conley, the grantee in the tax deed.

The defendants' father went into possession in 1870, and held it until his death on September 13, 1872. This defendant, John Carp, held the possession for a year and a half. This accounts for possession until the first quarter of the year of 1873. Then it was rented for a year to Moore and Whittaker. They left in the spring of 1874. Then it was rented to Zercher; that is, until the spring of 1875. Then it was rented to Reed and then to Estes, and then to Judd, but it is not shown how long they remained, respectively. About two years after that the house was torn down. Then there was no one on the land for a while, but the defendant, John Carp, cut fence posts and firewood and sold some timber.

In 1879 or 1880 the defendant, John Carp, moved to Caldwell county, where he remained for two years. During that time neither he nor any one for him was in possession of the land and exercised no visible acts of ownership over it. The house was gone and nearly all of the fences also. In fact, from 1879 to 1884, none of the defendants appear to have done anything to show a claim of any kind. The land was vacant, practically unfenced and unimproved. The defendants were not in the visible possession of the land, and paid no taxes on the land between the years 1880 and 1891. In 1884 the brother and brother-in-law of defendant John Carp, got wood off of the land. In 1888 John Carp tried to lease it to Curtis. In 1890 John moved again to Caldwell county, and although he paid the taxes for 1891, he exercised no visible acts of possession, and in fact, does not appear to have done anything about the land until 1892, when he leased it to defendant Hartford for a term of five years. The

plaintiffs paid the taxes for the years 1892 and 1893, and thereafter from 1894 to 1898 the defendants paid them. The plaintiffs acquired title at the sheriff's sale under a judgment for taxes on June 1, 1881, and afterwards from the Hannibal & St. Joe railroad, the record owner, by a quitclaim deed, on November 18, 1882. The plaintiffs do not seem to have ever been in possession of the land, but in April, 1885, the plaintiff, Putnam, answering a letter from the defendant, Rufus Carp, notified him that his firm owned the land and that Carp had no claim to it.

The sum of the whole matter, therefore, is, that the defendant has shown possession of the land from July, 1870, to 1879, or the spring of 1880, and from 1879 or 1880 until 1884 there is a hiatus in the defendant's possession. There is a further hiatus from 1884 to 1888, and from 1888, when John tried to lease to Curtis but failed, until 1892, when he leased to the defendant, there is another hiatus.

The result is that there is no evidence whatever in this record which tends to show that the defendants have ever been in the open, actual, visible, adverse, notorious, continuous, exclusive and uninterrupted possession of the land for a period of ten consecutive years.

The longest time that the defendants have shown any kind of possession was from July, 1870, until 1879 or the spring of 1880, and taken at its best this does not show ten full years. From 1879 or the spring of 1880, until 1892, when the land was rented to defendant Hartford, the defendants have shown only two acts that evidence ownership, to-wit, in 1884, when John's brother and brother-in-law got wood from the land, and in 1888, when John tried and failed to lease the land to Curtis. There is no substantial evidence in the record showing that the defendants exercised any acts of ownership or set up any claim whatever and they were certainly not in the actual, open or visible possession during that time, and paid no taxes from

1880 to 1891.   The land was unimproved, uncultivated, practically unfenced and so far as there were any physical evidences on the land itself, it was vacant during those twelve years.

The defendants have therefore failed to show title by limitation.

The fact that the defendants have color of title in the void tax deed to Conley does not materially affect the case.   Under the statute, Revised Statutes 1899, section 4266, possession, under color of title, of a part of a tract of land, in the name of the whole tract claimed, and exercising, during the time of such possession, the usual acts of ownership over the whole tract so claimed, is deemed possession of the whole tract.   But that does not apply here, for the defendants were not in possession of any part of the tract for the necessary period of time for the possession to ripen into a title by limitation.

The rule laid down by this court in construing this statute is thus stated in Goltermann v. Schiermeyer, 125 Mo. l. c. 302:

"In cases like this, in which possession is taken in good faith, under color of title or claim of right, it is held that to constitute an adverse possession there need not be a fence, building or other improvement made.   'It suffices for this purpose that visible and notorious acts of ownership are exercised over the premises in controversy for the time limited by the statute.'   [Draper v. Shoot, 25 Mo. 203.]   It will be observed that this rule requires less to constitute adverse possession than is required of a mere trespasser and more than is required of one in possession of a part under color of title to the whole tract.   All the authorities agree that the acts of possession must be visible and continuous for the requisite period in order to create the bar.   [Sedgwick and Wait on Trial of Title to Land, secs. 735, 737.]   It is not required that an act of possession should be done every day or month

or at any definite intervals, but they should be of such frequency and character as would at all times apprise the owner 'that his seizin was interrupted, and that his title may be endangered.' 'It would be a new and dangerous doctrine,' says HOUGH, J., in Turner v. Hall, 60 Mo. 275, 'to hold that a possession under color of title may be discontinued after a year, or a month, or a week, and that, thereafter, the constructive possession of the land would follow the color of title instead of the true title.' Judge BLISS says in Musick v. Barney, 49 Mo. 463: 'With the short limitation we have in Missouri, it would endanger property rights to permit a loose claim to land, with such acts of ownership only as might be exercised without attracting the attention of the real owner, and without actual occupation, to ripen into title.' He says further that, 'the indications of the claim and possession should be so patent that he (the owner) could not be deceived.' In the cases of Leeper v. Baker, 68 Mo. 400, and Mississippi County v. Vowels, 101 Mo. 225, the adverse claimant had color of title to the whole tract, and actual possession of a part, and, therefore, constructive possession of the disputed tract, which only required the exercise of such acts as an owner of the whole tract would, under the condition, situation and character of the land, have exercised. [R. S. 1889, sec. 6768.]''

This case is cited and followed in Ward v. Ihler, 132 Mo. l. c. 382; Hedges v. Pollard, 149 Mo. l. c. 225; and Brummell v. Harris, 162 Mo. l. c. 405.

The same rule was reannounced in Herbst v. Merrifield, 133 Mo. 267, and in addition it was there pointedly and aptly said:

"Possession to constitute a disseizin against the owner of the legal title, when not actual, must generally be so notorious by acts of assertion, that it may be presumed to have been known to the rightful owner. It should be so open and notorious that in passing by or

over his lands the owner could not reasonably be deceived. Acts of ownership by others than the holder of the legal title should not be held sufficient to constitute adverse possession unless they were of such frequency and of such a character as would at all times apprise the real owner that his seizin was interrupted and that his title was endangered. Most dangerous results would flow from the permission by courts of titles by limitation to ripen, in favor of those holding mere color of title, without actual occupancy, by acts of ownership so slight in and of themselves as not calculated to attract the attention of the real owner, or to indicate that his seizin (that follows his legal title) was interrupted. An occasional trespass by way of cutting timbers or digging a few loads of rock, is not sufficient to amount to an adverse assertion of title against the true owner, in the absence of express notice to the owner of such assertion of ownership by the trespasser.''

This suit was begun August 3, 1898, and as the plaintiffs have shown an unbroken record title, and as the defendants have not shown any valid record title, nor title by limitation, the plaintiffs were entitled to a peremptory instruction, and the trial court erred in refusing to give it as asked. The judgment of the circuit court is therefore reversed and the cause remanded to be proceeded with in conformity herewith. All concur.