ERNEST M. HILGERT, MARIO A. CAVAGNARO and MARGARET G. CAVAGNARO v. HILDA WERNER, Appellant.—145 S. W. (2d) 359.

Division One, December 11, 1940.

*Mat J. Holland* and *Edward P. Walsh* for appellant.

*Fordyce, White, Mayne, Williams & Hartman* and *G. Carroll Stribling* for respondents.

BRADLEY, C.—This cause was commenced in a justice of the peace court by plaintiff Hilgert under the landlord and tenant statute, Sec. 2607, R. S. 1929, 7 Ann. Stat., p. 3847, to recover possession of the described premises in St. Louis. Defendant filed answer claiming title by adverse possession. Thereupon the justice, under Sec. 2233, R. S. 1929, 4 Ann. Stat., p. 2405, certified the cause to the circuit court. In the circuit court the Cavagnaros were made parties plaintiff, and an amended statement or petition was filed, alleging that the Cavagnaros were the owners; that they, in 1936, leased to plaintiff, Hilgert, for ten years; and that defendant was a mere tenant.

Defendant filed in the circuit court an amended answer and cross-complaint. She alleged that she and her mother owned the premises; that they and their predecessor in title "have been in the actual,

open, hostile, exclusive and continuous possession under claim of ownership . . . for more than thirty years; have erected (on the premises) fixtures, appliances and machinery, which were and are permanently attached to the land; and for more than thirty years have continuously and uninterruptedly maintained and used such fixtures in the conduct of their business on said premises, openly, notoriously and exclusively, under claim of ownership, and have paid taxes on the land." Defendant denied that she, her mother or their immediate predecessor in title (defendant's deceased father, Louis Werner), at any time, held the premises as a tenant. The Cavagnaros claimed title under a deed from Swift & Company, and defendant asked that this deed and the lease to plaintiff, Hilgert, be set aside, and that title be "vested in defendant and the heirs of Louis Werner, deceased."

The court found that the Cavagnaros were the owners in fee and that Hilgert was entitled to possession. Defendant appealed.

The parcel of land in question, hereinafter referred to as the lot (it is only a part of a lot) is on the north side of Chouteau Avenue and extends 30 feet east and west and 190 feet north and south. Prior to 1910, the Laclede Gas Company owned the land immediately west of the lot in question and had record title to the lot. February 2, 1910, the Laclede Gas Company conveyed the lot, and other land adjoining on the west, to the St. Louis Independent Packing Company, and through mesne conveyances the Cavagnaros got a deed to the lot and other lands immediately west.

If title to the lot has been acquired by adverse possession, as claimed by defendant, such title, because of certain deeds by the Werners, is in defendant and her mother, but the mother is not a party, and we shall refer to defendant as the claimant by adverse possession.

It is conceded that defendant has no title of record, but the evidence shows that she, her grandfather, George Werner, her father, Louis Werner, and her mother, have been in the possession of the lot since 1887. George Werner bought the lot immediately east of the lot in question in August, 1887, and took possession "right away." The Werner lot, east of the lot in question, is 3741 Chouteau Avenue. There was a frame building on the Werner lot when George bought, and in this building, and in its successor, and on the lot in question, the Werners, father and son, from 1887, carried on the business "of building wagons and painting wagons and shoeing horses," until the death of George, and thereafter Louis continued the business until his death, June 17, 1936, and after the death of Louis, defendant conducted the business. When George bought in 1887, there was a west door in the old building, on the lot bought by him, opening onto the lot in question, and there were "two big west doors" in the new building later erected. In connection with their business the Werners had on the lot in question, a tire shrinker, and a coal shed, and also

heated the wagon tires on the lot. The Werners lived on the rear of their lot (3741 Chouteau) and they had on the lot in question, and for the children, a flying Dutchman and a teeter board. Also, the lot in question was used by the Werners through the years to place vehicles brought to their shop.

But plaintiffs say, as they pleaded, that the Werners occupied the lot in question as *tenants* and not as owners. Charles L. Krause testified that he was in the employ of the St. Louis Independent Packing Company from 1904 until 1931, as master mechanic and as operating manager; that Gus Bischoff was president of the packing company; that at the time (February 2, 1910) the packing company got a deed to the lot in question and other land he (Krause) "knew that Werner (Louis) had had possession of that piece of property for some time and fearing that probably he might claim through adverse possession, I asked Mr. Bischoff to see Mr. Werner and charge him a nominal sum for the rental."

Plaintiff's evidence shows that from 1910 the Werners have paid $2 per month to the record owner of the lot. In Louis' lifetime, he did considerable work in his shop for the packing company and the *rent*, as the packing company called it, was deducted from Werner's bills for services. Defendant admits that the $2 per month has been paid, but says that it was to reimburse for taxes paid by the record owner on the lot in question. Defendant testified that shortly after the packing company bought the property her "father and Mr. Bischoff had a conversation and my father was to retain the thirty feet, and whatever the taxes was on the whole place it was to be prorated and he was to pay his share of the thirty feet, which was $24.00 a year. . . . It has been paid ever since."

March 29, 1935, the St. Louis Independent Packing Company conveyed the lot to Swift & Company, and the latter conveyed to the Cavagnaros October 10, 1936. January 20, 1937, defendant wrote Mr. Goodman, manager of the packing company and speaking of the lot and a fence, about to be erected, said:

"This entrance thru lot on the west of our property has been used by the public for sixty-three (63) years by nabors who still own property. It has been used for fifty (50) years to my mother's knowledge—at the time of the purchase of property by my grandfather and father. This lot was sold for taxes quite a number of years ago and my father was tipped off that it was to be sold and he told Mr. Gus Bischoff, the original president and founder of the St. Louis Independent Packing Company, and he went down to the city hall and upon his return he had an arrangement with Mr. Bischoff whereby he was to pay part of the taxes on the same which he did and this alley was to remain open to the public and that is why we have built doors on the west side of the building. . . . We own three feet west of the building in the front, and if an arrangement could

1176

be made for the purchase of an additional 7 or 8 ft.—this would allow ample space for the public. . . ."

It is not necessary to further state the evidence. As stated, defendant and her family had possession of the lot since 1887, and it would seem that they exercised full rights of ownership. On the other hand there is substantial evidence that their possession was that of tenants. "There are five essential elements necessary to constitute an effective adverse possession: First, the possession must be hostile and under a claim of right; second, it must be actual; third, it must be open and notorious; fourth, it must be exclusive; and fifth, it must be continuous." [Swope et al. v. Ward et al., 185 Mo. 316, 1. c. 324, 84 S. W. 895.]

The term, adverse possession, designates "a possession in opposition to the true title and real owner, and it implies that it commenced in wrong—by ouster or disseizin—and is maintained against right. The law, on the contrary, presumes that every possession is rightful and consistent with, not in opposition or 'adverse' to, title and ownership. A party, therefore, who relies upon 'adverse possession' in order to rebut this presumption of possession consistent with the title of the real owner, must prove his possession to be 'adverse' to the title set up . . . that is, he must show the actual knowledge of the real owner that he claims in opposition to, and defiance of, his title, or he must show such an occupancy and user, so open and notorious, and inconsistent with, as well as injurious to, the rights of the true owner, that the law will authorize, from such facts, the presumption of such knowledge by the true owner. It is not the mere occupancy or possession which must be known to the true owner, to prejudice his rights; but its 'adverse character.'" [Hunnewell et al. v. Burchett, 152 Mo. 611, 1. c. 614, 54 S. W. 487. See, also, Indian Creek Land Co. v. Bradford et al. (Mo.), 82 S. W. (2d) 589; Bell et al. v. Barrett et al. (Mo.), 76 S. W. (2d) 394.]

Plaintiffs contend that, notwithstanding defendant's cross-complaint asking that the deed to the Cavagnaros and their lease to Hilgert be set aside, and that title be vested in defendant, the case is one at law, and that there was substantial evidence to support the judgment, and that such is final so far as concerns the facts. Plaintiffs so contend because of defendant's failure to make certain assignments in the motion for a new trial. But we do not deem it necessary to rule such question. We shall assume, without deciding, that the cause is in equity, and that we are not bound by the finding on the facts. It will, we think, be conceded that there was ample evidence tending to show that the possession of the Werners was not *adverse*, but was that of tenants. Even defendant, in her letter of January 20, 1937, made no specific claim of ownership except to "three feet west of the building," and as we understand the record these three feet were a part of the lot covered by 3741 Chouteau, and conced-

edly owned by the Werners. And in this same letter defendant says that "if an arrangement could be made for the purchase of an additional 7 or 8 ft." (beyond the 3 feet), etc.

There is nothing in the record that would justify the overturning of the finding and judgment below. The judgment should be affirmed and it is so ordered. *Hyde* and *Dalton, CC.,* concur.

PER CURIAM:—The foregoing opinion by BRADLEY, C., is adopted as the opinion of the court. All the judges concur.