ELLEN J. ALLEN, Respondent, v. GEORGE P. WISEMAN, ERNEST E. SAWYER, REBECCA BROWN, ELLA LIDDLE, IVA MAR LIDDELL, IVA MAE LIDDELL, JOSEPH F. BARTA, GEORGE W. TOMKINS, JAMES E. ELLISON, JAMES T. CLINKINGBEARD, NATHAN S. DARNELL, THOMAS J. ALLEN, and CATHERINE M. ELLISON, if living, and if dead their unknown Heirs, Consorts, Devisees, Donees, Alienees and Immediate, Mesne, Remote, Voluntary and Involuntary Grantees; and ALLIE DARNELL, LOLA MCCULLOUGH, JOE ELLISON, MARY WALKER, JOSIE MCKAY, MINNIE PEACOCK, ROY ELLISON, and CHAS. J. ELLISON, Appellants, No. 41368—224 S. W. (2d) 1010.

Division One, December 12, 1949.

*John M. Bragg* for appellants.

*Rogers & Rogers* for respondent.

VAN OSDOL, C.—Action instituted March 23, 1948, to try, ascertain and determine title to a tract of real property of about three acres in Douglas County. Section 1684 R. S. 1939, Mo. R. S. A. §

1684. Certain of the defendants filed answer claiming ownership as the surviving children of Catherine M. Ellison who was the record owner and who died in 1919. The surviving husband of Catherine, James K. Ellison, a life tenant by the curtesy, sold and conveyed the land to plaintiff by warranty deed dated September 1, 1925, for a consideration of $450. James died August 23, 1936. The trial court found the fee simple title to be vested in plaintiff by limitation under the provisions of Section 1008 R. S. 1939, Mo. R. S. A. § 1008, and rendered a judgment and decree for plaintiff. We believe the trial court inadvertently referred to Section 1008, supra, but intended the finding the fee simple title vested by limitation under the provisions of Section 1002 R. S. 1939, Mo. R. S. A. § 1002. Defendants, children of Catherine, have appealed.

Does the evidence justify the trial court's judgment establishing a title in plaintiff by adverse possession?

When plaintiff received her conveyance from James K. Ellison in 1925, she went into possession, "cleared off" the land and sowed it in bluegrass. She bought the tract for a building site. Her husband then owned "the rest of the 80 acres," which he sold to one Tompkins over twenty years ago. At the time of plaintiff's purchase, the tract herein involved had a "sorry wire fence" around it. Back several years (the instant action was tried November 3, 1948) plaintiff rented the place to Steve Wallman for one year; "he fixed up the fence and paid the taxes" for the year. It could be inferred Wallman rented the tract in 1936 or 1937. Except for the one year, plaintiff has paid the taxes. Plaintiff does not know whether Wallman actually used the property, but she doesn't "think he would pay the taxes and fix the fence up if he didn't intend to use it."

"Within the last 12 years" plaintiff has made arrangements with her daughter "to rent it (the land) and look after it for her." The daughter "drove out there every once in a while and looked it over." There is no evidence the daughter repaired the fences or cut the underbrush or rented or cultivated the land or constructed any improvement thereon, until about "a year ago or something like that" the daughter "had the underbrush cut and cut a tree or two," put a white plank fence around it and built a barn.

One Dewhirst, witness for defendants, testified he had repaired the fence in 1938. Dewhirst had a little agreement with Roy Ellison, defendant-appellant, "to rent it to put some cows in there, and he told me to fix the fence and I could use it for a week or ten days. - - - He said as far as he was concerned he didn't care." Dewhirst had two cows "in there," and plaintiff's daughter "was down there one evening and drove my cows out."

Don Spurlock, witness for defendants, had lived in the vicinity about twenty years. He stated he had seen stock on the tract but does not "know who they belonged to. - - - The greater percent of

the time there hasn't" been any fence around the tract. He had heard the land belonged to plaintiff, and he had heard it belonged to Catherine Ellison. He had "seen people there,—children."

Plaintiff cannot establish her title by adverse possession except by evidence that her possession for the statutory period was hostile, that is, under claim of right; actual; open and notorious; exclusive; and continuous (Hilgert v. Werner, 346 Mo. 1171, 145 S. W. 2d 359); whenever "any of these elements is lacking, no title by adverse possession can ripen" (Eaton v. Curtis, 319 Mo. 660, 4 S. W. 2d 819); the burden of proof as to each of the five elements is on the person claiming title through adverse possession (State ex rel. Edie v. Shain, 348 Mo. 119, 152 S. W. 2d 174).

And plaintiff was obliged to show her adverse possession for the statutory period beginning subsequently to the death of James, the widower. (The death of the wife Catherine occurred before the abolition of estates by the curtesy in 1921. See Laws of Missouri 1921, p. 119; Section 319 R. S. 1939, Mo. R. S. A. § 319.) The statute of limitations did not commence to run against the children of Catherine until the death of the life tenant by the curtesy, James. So long as the life tenant lived the remaindermen's right of possession was in abeyance because of the intervening life estate. The remaindermen's right of action did not accrue until the termination of the life estate. This was true, although the life tenant attempted to convey the fee and the life tenant's grantee claimed the fee. Crismond v. Kendrick, 325 Mo. 619, 29 S. W. 2d 1100; Willis v. Robinson, 291 Mo. 650, 237 S. W. 1030; Wofford v. Martin, Mo. Sup., 183 S. W. 603; Armor v. Frey, 253 Mo. 447, 161 S. W. 829; Salmons' Adm'rs. v. Davis, 29 Mo. 176.

Having examined the evidence, we are of the opinion plaintiff has failed to establish title by adverse possession. We believe she has not shown the continuity of adverse possession essential to ripen her title.

As stated, there was evidence to show plaintiff rented the land to Wallman for a year; this was in 1936 or 1937. It has been said no more affirmative act of ownership can be asserted than the rental of land and the collection of rents thereon. Jamison v. Wells, Mo. Sup., 7 S. W. 2d 347. The repair of fences and the pasture of cattle by plaintiff's tenant, Wallman, were visible evidences of plaintiff's possession. There was evidence plaintiff's daughter in 1938 drove the stock belonging to the witness Dewhirst from the enclosure. There was also testimony plaintiff had paid taxes, evidence of her claim of ownership. Plaintiff ▇▇▇ introduced evidence tending to show an ouster, and possession for a time, under claim of right or title, but it was furthermore necessary that she show that defendants had actual knowledge of her "adverse possession," that is, of her possession and claim in opposition to and in defiance to their title; or plaintiff was

obliged to show such an occupancy or user so open and inconsistent with, as well as injurious to, the rights of defendants, that the law will authorize from such facts the presumption of such knowledge by defendants, the true owners. Hilgert v. Werner, supra; Hunnewell v. Burchett, 152 Mo. 611, 54 S. W. 487. Adverse possession must be shown to have been continuous and unbroken for the whole prescribed period of limitation. Stone v. Perkins, 217 Mo. 586, 117 S. W. 717; Brown v. Hartford, 173 Mo. 183, 73 S. W. 140; Turner v. Hall, 60 Mo. 271; Vol. 1, Am. Jur., Adverse Possession, § 148, pp. 877-878. "What acts will characterize possession as 'actual' depends on the facts of particular cases. The nature and location of the property, the uses to which it can be applied and all the circumstances must be considered." Frazier v. Shantz Real Estate & Investment Co., 343 Mo. 861, 123 S. W. 2d 124; Goltermann v. Schiermeyer, 111 Mo. 404, 19 S. W. 484; Draper v. Shoot, 25 Mo. 197. See also Lossing v. Shull, 351 Mo. 342, 173 S. W. 2d 1, and cases therein cited.

After the year 1938 there was no visible act (shown in evidence) of occupancy or user or dominion by plaintiff as would put defendants on notice that she possessed and claimed to own the land, until her daughter entered upon the land in 1946 or 1947, cleared out the underbrush, cut a tree or two, and built a new fence and a barn. For a period of perhaps eight years there was no act of plaintiff openly and notoriously manifesting adverse possession. While temporary absence from the land after the Statute of Limitations has begun to run without an intention to abandon possession will not break the continuity of possession (Hunter v. Pinnell, 193 Mo. 142, 91 S. W. 472), yet in the instant case there was an entire absence of proof of any visible act of ownership or dominion during a period of about eight years. It could hardly be reasonably said defendants should be held to have known their title was endangered. The law restored the constructive possession of the true owners, defendants, heirs of Catherine. As said by Hough, J., in Turner v. Hall, supra, 60 Mo. at page 275, "It would be a new and dangerous doctrine, to hold that a possession under color of title, may be discontinued after a year, or a month, or a week, and that, thereafter, the constructive possession of the land would follow the color of title instead of the true title."

The record is equivocal in showing defendants-appellants constitute all of the children (or their descendants) of Catherine M. Ellison. It was the testimony of Joe Ellison, defendant-appellant, that his sister Ida, daughter of Catherine, married one Richardson, and has been dead for several years. It seems Ida was survived by children, some of whom "are of age and one or two are not." The record has disclosed improvements have been made by plaintiff or her daughter upon the land herein involved. Upon remand the trial court should cause the children or other descendants of Ida to be made parties. Their rights and interests as heirs of Catherine should

be protected and determined in a decree vesting the title to the described land in the heirs of Catherine including defendants-appellants.

It would be in harmony with the broad and far-reaching language of the remedial statute, Section 1684, supra, under which the action was instituted, and with the spirit of the Civil Code of Missouri that the pleadings be amended upon remand, if the parties be so advised; and that the trial court finally determine the possessory rights of the parties. The trial court may inquire further into the good faith of the erection of improvements. If it be found the improvements were made in good faith, the court may determine the value thereof, and the value of the land aside from the improvements. The right to possession and the right to recover compensation for improvements may be determined under the provisions of Section 1548 et seq. R. S. 1939, Mo. R. S. A. § 1548 et seq. Gray v. Clement, 296 Mo. 497, 246 S. W. 940; Hill v. Ballard, Mo. Sup., 178 S. W. 445. See also Section 1684, supra; Koehler v. Rowland, 275 Mo. 573, 205 S. W. 217; Cantrell v. City of Caruthersville, 359 Mo. 282, 221 S. W. 2d 471.

The judgment should be reversed, and the cause remanded with directions to proceed in accordance with this opinion.

It is so ordered. *Bradley* and *Dalton, CC.,* concur.

PER CURIAM:—The foregoing opinion by VAN OSDOL, C., is adopted as the opinion of the court. All the judges concur.