235 S.W.2d 273 (1950)
ELD
v.
ELLIS et al.
No. 41932.
Supreme Court of Missouri, Division No. 1.
December 11, 1950.
Motion for Rehearing or to Transfer to Denied January 8, 1951.
*274 Earl C. Borchers, St. Joseph, for appellant.
F. V. Worden, St. Joseph, for respondents, C. Ross Ellis and Mary G. Ellis.
Motion for Rehearing or to Transfer to Court en Banc Denied January 8, 1951.
*275 LOZIER, Commissioner.
Appellant (hereinafter called plaintiff) appeals from an adverse judgment in his suit to quiet title to a lot in the City of St. Joseph. Defendants below were C. Ross Ellis and Mary G. Ellis, his wife, the Chase National Bank and Mary Motter Ralli. The latter two defendants made default. The answer of Mr. and Mrs. Ellis asserted title under a city tax deed and prayed affirmative relief. Plaintiff's reply denied the validity of the tax deed and claimed title under two quitclaim deeds. Judgment was in favor of Mr. and Mrs. Ellis, respondents (hereinafter called defendants), and against plaintiff, the bank and Mrs. Ralli. The issues are plaintiff's alleged adverse possession of the lot, the validity of the tax deed and plaintiff's rights under the quitclaim deeds.
The record title ran thus: In 1921, in a partition suit involving the estate of Richard Turner, the lot was set off to John S. Brittain, Jr., and others. Apparently, Turner was the owner in 1918 when plaintiff first occupied the lot. In 1929, Francis A. Pickle was grantee in a sheriff's deed in the partition of Brittain's estate. Pickle thereafter quitclaimed to Samuel I. Motter, who died in 1932. Thereafter, it was agreed, the title was in Motter's heirs, viz.: Susan B. Motter, widow, and Susan Motter Kiefaber and Mary Motter Ralli, daughters, each being the owner of an undivided one-third interest. Defendants were grantees in a city tax deed reciting $3.10 consideration, delivered on June 18, 1945, and recorded five days later. In September and November, 1946, respectively, Mrs. Motter and Mrs. Kiefaber quitclaimed to plaintiff for a nominal consideration. Plaintiff never secured a quitclaim deed from Mrs. Ralli.
Plaintiff testified that he first entered upon the lot in the spring or summer of 1918 and began "gardening and farming it" and "took care of it as his own"; that he paid nothing for the "privilege of gardening it"; that he did more than "keep the lot clean and have a garden on it"; that he planted peach and maple trees and levelled the lot; that "through the years * * * he was operating the property, gardening and taking care of it * * * for himself and his family"; that "he went into possession" in 1918 under "permission" of someone, and under an "arrangement made by his wife (who died in 1940) with someone"; that he didn't know if such arrangement was made with "the owners of the land" or whether such "owners" gave him permission to go there for the purpose of "gardening it"; that he didn't know who gave his wife "permission to go there and have a garden," but that his wife had told him that "the owner" had; that he "had permission to go there and wasn't trespassing according to what his wife had said."
Defendant Ellis testified that, after he received the tax deed, he talked to plaintiff; that plaintiff had stated that "he (plaintiff) was glad he (defendant) had bought the lot since he (plaintiff) didn't get it"; that plaintiff asked him about "gardening" and that defendant "told him to go ahead and garden the lot as usual, to keep it clean, see to keeping the weeds down"; and that on one occasion thereafter he "sent out there" a man who wanted to "garden the lot"; that plaintiff "ran him off"; that defendant told the man plaintiff had no right to do that; and that he (defendant) was not interested at that time "whether the lot was cultivated."
There was no evidence that plaintiff's possession was open and notorious, or that it was hostile and under claim of right. Proof of these elements was essential. Allen v. Wiseman, 359 Mo. 1026, 224 S.W.2d 1010; Hoelmer v. Heiskell, 359 Mo. 236, 221 S.W.2d 142; and Pahler v. Schoenhals, Mo.Sup., 234 S.W.2d 581. The testimony of plaintiff himself shows that he neither took nor continued to hold possession of nor claimed the lot in any way adversely or hostile to the record owners. Horton v. Gentry, 357 Mo. 694, 210 S.W. 2d 72.
Possession by permission is not adverse. Dalton v. Willis, Mo.Sup., 228 S.W.2d 709; and Hoxsey Hotel Co. v. Farm & Home S. & L. Ass'n of Mo., 349 Mo. 880, 163 *276 S.W.2d 766. If possession was permissive at its inception, then it remained so until the hostile claim was brought home to the true owner." Williams v. Diederich, 359 Mo. 683, 223 S.W.2d 402, 404. See also Anson v. Tietze, 354 Mo. 552, 190 S.W.2d 193; and Freed v. Greathouse, 238 Mo.App. 470, 181 S.W.2d 41.
"There was no act of plaintiff openly and notoriously manifesting adverse possession." Allen v. Wiseman, supra [359 Mo. 1026, 224 S.W.2d 1013.]. Occupancy alone or coupled with payment of taxes is not sufficient. See Hansen v. O'Malley, 356 Mo. 908, 204 S.W.2d 281; Brown v. Evans, Mo.Sup., 182 S.W.2d 580; Welsh v. Brown, 339 Mo. 235, 96 S.W.2d 345; and Hunnewell v. Burchett, 152 Mo. 611, 54 S.W. 487. See also Hilgert v. Werner, 346 Mo. 1171, 145 S.W.2d 359; Indian Creek Land Co. v. Bradford, Mo.Sup., 82 S.W.2d 589; Bell v. Barrett, Mo.Sup., 76 S.W.2d 394; and Allen v. Wiseman and Pahler v. Schoenhals, supra. Compare King v. Fasching, Mo.Sup., 234 S.W.2d 549, decided concurrently herewith.
We note the admissions made by plaintiff in his 1945 conversation with defendant Ellis in which he not only failed to assert his claim, but expressed pleasure that Ellis had bought the lot "since he (plaintiff) didn't get it," requested permission to "garden it" and was told to "go ahead as usual." If "running the man off" in 1945 or thereafter was an assertion of a claim of title by adverse possession (which we doubt), this is the only evidence of such assertion. Furthermore, such assertion against defendants' title was not made early enough to permit plaintiff to acquire title by adverse possession. In any event, plaintiff's own testimony as to his intentions and the nature of his occupancy since 1918 was so clear and definite that we have no doubts to be resolved by deference to the trial judge's findings. Clearly, plaintiff's use of the lot was permissive by all the record owners, including defendants, since 1918.
Defendant Ellis testified that plaintiff acknowledged defendants' title and plaintiff offered no denial of this testimony. Accordingly, the conclusion that plaintiff expressly acknowledged defendants' title is justified. See Eaton v. Curtis, 319 Mo. 660, 4 S.W.2d 819. We hold that plaintiff failed to establish title by adverse possession.
Plaintiff argues here that "payment of taxes by one in possession" is for consideration on the adverse possession issue. There was no evidence that plaintiff paid any taxes. Plaintiff offered to testify that his wife handled the family finances and "paid the bills, including taxes," during her lifetime. If this evidence was admissible, plaintiff did not offer it as evidence of payment of taxes, but only as corroborative of his statement "that prior to defendants' assertion of their claim he (plaintiff) did not know that city taxes had to be paid every year or the property would be sold for taxes." The evidence was properly rejected.
The tax deed under which defendants claim was substantially in the form set out in Sec. 6351. All statutory references are to both Mo.R.S.1939, and Mo.R.S.A. The recitals of the deed showed the sale in November, 1942, for 1942 city taxes in compliance with statutory requirements for sales for delinquent taxes of cities of the first class. Sec. 6329 et seq. Plaintiff does not challenge the validity of any of these proceedings. But, he contends, the deed was void on its face, in that the recital of the date of its execution was June 18, 1942.
As a deed operates from time of delivery, a date is not essential. Absence of a date, or an erroneous or impossible date, is a mere irregularity where the real date of delivery is shown. 26 C.J.S., Deeds, § 22, p. 202; 16 Am.Jur., Deeds, Sec. 55, p. 472; and Devlin, Deeds (3rd Ed.), Vol. I, Sec. 177, p. 259. According to the jurat, defendants' tax deed was acknowledged June 18, 1945. Defendant Ellis testified that the deed was delivered to him on June 18, 1945. We deem the recital date a mere irregularity and one insufficient to void the deed. See Sec. 6359.
In the cases cited by plaintiff, such as Comfort v. Ballingal, 134 Mo. 281, 35 S.W. 609, the validity of some phase of *277 the administrative proceedings preliminary to the execution and delivery of a tax deed was involved. See Beckwith v. Curd, 347 Mo. 602, 148 S.W.2d 800. The authority of the City of St. Joseph to levy and collect the taxes, or the propriety of the proceedings resulting in the execution of this tax deed, are not issues hereonly the form of the tax deed itself. We rule that the deed was not void because of the irregularity in its recital as to date of execution.
What was the effect of plaintiff's quitclaim deeds? Plaintiff first contends that, as the value of the lot was $800 or $1,000, the tax deed should have been set aside for inadequacy of consideration. However, plaintiff is in no position to make this request of a court of equity. With knowledge of that deed, and while in possession of the lot by express permission of defendants, he secured his quitclaim deeds from two of the three former owners for a nominal consideration. And this was after the time had expired within which the Motter heirs, or "their agents or attorneys," could have redeemed by making certain payments to the city treasurer and to defendants. Sec. 6342. We need not determine what redemption rights, if any, plaintiff acquired under Sec. 6342, or his right to redeem in this suit under Sec. 6345. It is sufficient to point out that plaintiff's permissive, nonadverse occupancy was not an interest in the land entitling him to challenge the sufficiency of the consideration for the tax deed. See Davis v. Johnson, 357 Mo. 417, 208 S.W. 2d 266; and State ex rel. Wilkins v. King, 354 Mo. 501, 189 S.W.2d 981.
Compare the facts in De Tienne v. Peters, 354 Mo. 166, 188 S.W.2d 954, 956, wherein we said: "Plaintiff, being a total stranger to any interest in the title to this land until after the tax sale and recording of the deed, could not purchase with the title a right to maintain an action for fraud. A right of redemption is a right inherent in the title itself which is assignable. In this case plaintiff appeals to the conscience of a court of equity and asks that a sale be set aside because the owners of the property were defrauded. The owners of the property, whose interest he purchased, are not asking the court of equity to do this. Plaintiff does not stand in a position to reap the benefit of the decree he asks because he was not injured by the sale of the land." Compare also Davis v. Johnson, supra; and see Liese v. Sackbauer, Mo.Sup., 222 S.W.2d 84, and Mahurin v. Tucker, Mo.Sup., 161 S.W. 2d 423.
Plaintiff's claim under the quitclaim deeds was that of a stranger to the title. He acquired the claim for a nominal consideration when he was not in possession under any claim of right, or any claim adverse to defendants or the prior record owners, and after he had acknowledged defendants' title. As such stranger, he could not challenge defendants' tax deed for alleged inadequacy of consideration.
Furthermore, plaintiff's nonadverse occupancy prohibited him from asserting a title adverse to that of the defendants who had placed him in possession under the oral agreement. After delivery and recordation of the tax deeds, plaintiff acknowledged defendants as the new owners, asked for and received permission to "garden the lot as usual" and remained in actual possession under this agreement. And plaintiff was still in possession under that agreement when he filed his suit. King v. Fasching, supra.
The well-established rule is that a tenant in possession is estopped to deny his landlord's title. It applies where the tenant was in actual possession when the tenancy was created, and prevents such a tenant from asserting against his landlord a title adverse to that of the landlord. 51 C.J.S., Landlord and Tenant, §§ 266, 268 and 276, pp. 909, 913 and 928; and 32 Am.Jur., Landlord and Tenant, Secs. 101, 103 and 113, pp. 108, 111 and 118. See also Lossing v. Shull, 351 Mo. 342, 173 S.W.2d 1; Renshaw v. Reynolds, 317 Mo. 484, 297 S.W. 374; Sharp v. Richardson, 353 Mo. 138, 182 S.W.2d 151; and Goodwin v. Holland, Mo.App., 200 S.W.2d 588.
It was incumbent upon each of the parties to establish the better title and the right to the affirmative relief each *278 respectively asked. Johnson v. McAboy, 350 Mo. 1086, 169 S.W.2d 932. As the trial judge properly found the issues in favor of defendants, the judgment is affirmed.
VAN OSDOL and ASCHEMEYER, CC., concur.
PER CURIAM.
The foregoing opinion by LOZIER, C., is adopted as the opinion of the court.
All concur.