## FRANK, Appellant, v. GODDIN.

### Division One, February 22, 1906.

1. **ACCRETIONS: Law How Determined.** Whatever be the common law or the civil law, each State may settle for itself the title to lands formed by accretions within its boundaries.

2. ———: **Riparian Owner: Boundary.** The riparian owner does not own to the middle of the thread of a navigable river, but only to low water mark. Where the water line is the boundary, that boundary, no matter how far it shifts, either inwardly or outwardly, remains the shore owner's boundary.

3. ———: ———: **Reformation.** Where shore land has been washed away and the void space thus created becomes the river bed and thereafter new land reforms in the river within the original survey, such new land does not necessarily belong to the owner of the survey—the riparian owner. If it be formed to or against the shore land by accretion or reliction, it will belong to the riparian owner. If, on the other hand, it begins to form as a sand bar in the channel, and swells and extends from that nucleus towards the shore until it occupies a part of what was formerly the original survey of the shore owner, it does not belong to such shore owner.

4. ———: **Islands.** All islands formed in the channel of a navigable river and their appurtenant alluvium, belong to the respective counties in which they appear, and are subject to disposition as swamp lands for the benefit of the public schools.

5. ———: ———: **Definite Boundaries: Field Lands.** Where the land sold by the county court was an island with the river for its boundary, and was not field land limited by fixed and arbitrary boundaries, the purchaser is entitled to all accretions thereto formed after the patent has issued to him, although thereafter the county may convey to another purchaser, by fixed boundaries, calls and distances, a certain part of the new made land which appeared above the surface of the water after the patent to the first purchaser was issued and which formed adjacent to and connected with the land conveyed to that former purchaser. The purchaser of the island, although the patent described it as a definite number of acres, assumed the chance of its being increased by accretions or reliction, and of its being decreased by washing away, and if it was increased the accretion or reliction inured to him by operation of law. Nor was it necessary for his patent in terms to convey thereafter accreted lands.

6. – ,—–:  Patent:  Miscalculation of Acres:  Collateral Attack.
In a collateral proceeding, such as a suit to quiet title, a patent, issued by the county and regular on its face, cannot be declared to be void, for that, by miscalculation of the surveyor, it purported to convey 100 acres, whereas the diagram or plat presented to the court by the surveyor contained 127 acres. For irregularity made apparent by matter *in pais*, *dehors* the court record, the patent can be avoided only by a direct proceeding.

Appeal from Warren Circuit Court.—*Hon. E. M. Hughes*, Judge.

AFFIRMED.

*Robert Walker* for appellant.

Besides his title, as left unaffected by the action of the Missouri river, plaintiff showed himself the owner of title through valid purchase from the county court. Laws 1895, p. 207; Laws 1899, pp. 276, 277, 278. The land claimed by plaintiff is bounded on the south by a line fixed by definite metes, distances and calls, and this is the north line of the land claimed by defendant to have been purchased by him from Warren county, and this line, as well as all other lines of the land purchased by defendant, is limited to fixed metes and bounds. Defendant cannot go beyond these metes and bounds and claim as an owner of riparian rights. Sweringen v. St. Louis, 151 Mo. 357; Smith v. St. Louis Public Schools, 30 Mo. 290; Ellinger v. Railroad, 112 Mo. 525; Cook v. McClure, 58 N. Y. 437; Dunlap v. Stetson, 4 Mason 349. Besides this, the fact is undisputed that defendant purchased his land for less than $1.25 an acre. The action of the county court in making patent to defendant to some 127 acres of land at a price for which only 100 acres could be sold was without warrant of law and void. State ex rel. v. Crumb, 157 Mo. 545; Railroad v. Wayne County, 125 Mo. 351; Railroad v. Hatton, 102 Mo. 45.

*C. E. Peers* and *W. S. Pope* for respondent.

(1) Defendant claimed that the land mentioned in the petition was an island in the Missouri river of recent formation, and that he bought it from county and received a patent on November 21, 1898. Plaintiff claimed under patent, dated February, 1901, and that the land in dispute was an accretion to the main land which he owned. The evidence of plaintiff's witnesses seems to establish the fact that the land was an island of recent growth; that it commenced a sandbar, and formation thereto created the land in suit. It was not an accretion to the main land. There was at all times water in a well-defined channel or slough between it and the main land, through which boats passed during high water. (2) The contention that the land sold to defendant was void because sold for less than $1.25 per acre is not tenable. When surveyed and sold to defendant there was but 100 acres of the island. If more than that quantity now, by reason of accretions thereto, it belongs to defendant.

LAMM, J.—The scene is laid near Loutre (*alias,* Otter) Island in the Missouri river—a historic spot in the early annals of Missouri. The *dramatis personae* are Frank, the owner of certain shore land on said river, *i. e.* the riparian owner, and Goddin, an islander. Frank bases a claim to the land involved somewhat upon the ownership of the shore, but mainly upon his purchase from Warren county on December 31, 1900, and a patent issued therefor February 8th, 1901, by said county under the provisions of article 6, chapter 122, Rev. Stats. 1899, relating to "accreted lands." Goddin, in possession, claims the land as an accretion to an island off said shore, locally known as Goddin island, which island he claims to own under a patent from the same county of date November 21, 1898, made under the provisions of an act of the Legislature in

1895 (Laws 1895, p. 207), and which act, as subsequently amended and supplemented, forms article 6, *supra*. As the description of the land in dispute is intricate and technical, consisting of metes, bounds, angles, degrees, and calls for distances, monuments, etc., and as such description seems not material on review, it will be omitted.

From a judgment general in form in favor of Goddin and for costs, *nisi*, in an action brought by Frank to determine the respective interests of Frank and Goddin in, and to quiet title to, the said real estate, based on section 650, Revised Statutes 1899, Frank appeals.

Other essential record facts will appear further along.

(1) A small part of section 29, township 46, range 4, in Warren county, has been preserved from the wasting wash of the river waters and is owned by appellant, who purchased through probate proceedings from a Stuart estate. When originally surveyed by the government, section 29 consisted of a fractional northeast quarter, 158.9 acres, a full northwest quarter, 160 acres, and a fractional south half, 39.18 acres—the river bounding it on the south. The erosion of the current ate away the larger part of this land, some of it during Frank's ownership. A few years ago there appeared in the river, partly south of Frank's shore line, a sand bar, or, in the language of rivermen, "a towhead," which grew by recession and accretion until a certain portion of the bar projected over the aforesaid survey, leaving the channel of the river split in twain, part being north of the sand bar and between that and the shore line, and part south of said bar. The bar continued to grow, not in a saltatory way, but by accretion of alluvium insensibly formed and deposited, willows finally took root, overflows came leaving deposits until some portions at highest elevations were above flood tide; at which time respondent procured his patent, entered into possession, and, struggling with recurring

floods, gained a precarious foothold, and has opened a small plantation, including therein the land in controversy.

We do not understand the learned counsel for appellant to contend that, because some of Frank's shore land was disintegrated, held in solution by the water and carried off, pushing the north bank of the river further north, he would be entitled to new land reformed on the situs of the old, unless such new land was formed by accretion to the north shore or by recession there. His contention, as we interpret it, is rather that this condition of things created equities, springing from the natural justice of the thing, which should have some determinative force on other controverted questions in the case presently to be considered. Is this contention sound? We think not, because:

In the first place, whatever be the common law or the civil law, each State of this Union may settle for itself the title to lands formed by accretions within its boundaries. [Barney v. Keokuk, 94 U. S. 324; St. Louis v. Rutz, 138 U. S. 226.]

In the second place, in Missouri, the riparian owner does not own to the middle of the thread of a navigable river, *ad filum medium aquae* (Benson v. Morrow, 61 Mo. 345), but only owns to low water mark. [Cooley v. Golden, 117 Mo. 33; State ex rel. v. Longfellow, 169 Mo. 109.] And this court in Naylor v. Cox, 114 Mo. l. c. 243-4, adopted (badly proof reading) the reasoning and rule announced in Welles v. Bailey, 55 Conn. l. c. 317, thus: "All original lines submerged by the river have ceased to exist; the river is itself a natural boundary, and every changing condition of the river in relation to adjoining lands is treated as a natural relation and is not affected in any manner by the relations of the river and the land at any former period." It results from the foregoing, that where the water line is the boundary, as it was of Frank's land north of the river, that boundary, no matter how far

it shifted north, remained his south boundary subject to be again shifted south by accretion or recession.

In the third place, the conclusion follows, using the foregoing legal propositions as postulates, that where shore land has been washed away and the void space thus created becomes the river bed and thereafter new land reforms in the river within the original survey, such new land does not necessarily belong to the owner of the survey—the riparian owner. If it be formed to the shore land by accretion or reliction it will belong to the riparian owner. If, on the other hand, a sand nucleolus appears in the channel off the shore, which swells, peradventure, to a nucleus and thereafter, by reason of alluvion accreting thereto, eventually reaches the geographical dignity of an island, such island with the alluvion thereto accreted does not inure to the riparian owner. [Chinn v. Naylor, 182 Mo. 583; DeLassus v. Faherty, 164 Mo. 361; Naylor v. Cox, 114 Mo. 232; Cooley v. Golden, 117 Mo. 33; Cox v. Arnold, 129 Mo. 337; McBaine v. Johnson, 155 Mo. 191; Moore v. Farmer, 156 Mo. 47; Widdecombe v. Chiles, 173 Mo. 195.] But, under the statutes heretofore referred to (art. 6, chap. 122, R. S. 1899), all such islands and their appurtenant alluvium, the fantastic progeny of the mysterious and muddy river, alternately spewed out of and then, perchance, swallowed into the maw of its waters, belong to the respective counties within which they appear, and are subject to disposition as swamp lands for the benefit of the public schools—they being part of the public domain. [State ex rel. v. Longfellow, 169 Mo. *supra.*]

(2)   The chief contention of Frank is that the county's grant to Goddin was by a fixed boundary, was confined and fixed by arbitrary and immutable lines and, hence, the right to accretion, reliction or recession could not apply to his grant.

To deal with this contention intelligently reference must be had to the record before us. It seems the

Warren County Court conveyed to Frank by fixed boundaries, calls and distances, a certain part of new-made land which substantially appeared above the surface of the waters *after* its patent to Goddin and which formed *adjacent to and connected with Goddin's land*. It seems, furthermore, that Goddin petitioned for a grant of an island of exceedingly irregular form and loosely estimated by him to contain 300 acres. It seems, also, said county court ordered a survey made under the provisions of the act then existing (Laws 1895, *supra*), and by the survey a unique, irregular and quasi-geometrical figure was platted and a diagram thereof presented to the county court. The survey estimated the tract at about 100 acres. Thereupon Goddin paid into the county treasury $125, being the least price at which one hundred acres of land could be sold, and the county court by its patent set forth and conveyed to him as follows:

"Whereas, it having been shown to the satisfaction of the county court of Warren county, Missouri, at its August term, 1898, that a tract of land has, within the past five years, formed in the old bed of the Missouri river in or opposite to sections twenty-eight and twenty-nine, township forty-six, range four, west, in Warren county, Missouri, by the recession or abandonment of the waters of said stream.

"The said track of land was thereupon ordered by this court to be surveyed, according to law, by the county surveyor of the county aforesaid, and that he report his proceedings under said order at the next term of this court thereafter, to-wit, the November term, 1898, of the county court of Warren county, aforesaid; and whereas, as appears by the report of said surveyor filed at the November term of this court, 1898, he did make survey of said island which, according to his said report, contains about one hundred acres of somewhat elevated land higher than the sand bars then surrounding same, which said land, according to the laws now in

force in this State, becomes a part of the school lands of Warren county, Missouri, and subject to sale by order of the county court of the county aforesaid, at public or private sale, and whereas, B. H. Goddin has offered and deposited with the clerk of this court the sum of one hundred and twenty-five dollars for said land, being at the rate of one dollar and twenty-five cents per acre therefor.

"It is considered by the court that it is the best interest of said county that said offer be and the same is hereby accepted, and it is therefore ordered, adjudged and decreed by the court that all the right, title and interest that said county of Warren acquired for school purposes by reason of the premises and by virtue of the laws of the State of Missouri, be and the same is hereby vested in and sold and conveyed to said B. H. Goddin, and unto his heirs and assigns forever.

"In testimony whereof, we have hereunto set our hands", etc.

It may be conceded to appellant that a grantor might convey his upland by such boundaries, calls and immutable lines and description as would result in a reservation to the grantor of appurtenant flat lands and their present or subsequently accreted alluvion. Such was the case in Dunlap v. Stetson, 4 Mason 349, and such substantially was the case of Cook v. McClure, 58 N. Y. 437—both relied upon by appellant. The same principle was in effect applied by this court in controversies relating to urban lots conveyed with reference to and bounded by streets, one of which fronted on a navigable river bank. [Smith v. St. Louis, 21 Mo. 36; Smith v. St. Louis Public Schools, 30 Mo. 290; Ellinger v. Railroad, 112 Mo. 525; Sweringen v. St. Louis, 151 Mo. 348.] As said by NAPTON, J., in Smith v. St. Louis Public Schools, *supra,* referring to the general rule regulating accretion: "This rule, however, did not apply to fields which the Romans termed limited, or *agri limitati.* *'In agris limitatis jus allu-*

*vionis locum non habere constat.'* " We conceive that appellant's learned counsel has fallen into the error of assuming that Goddin's land is *ager limitatus.* To our mind, the grant was not that of a field limited by fixed and arbitrary boundaries. To the contrary, his petition, survey and patent, read together and fairly construed, referred and related to an *island,* as such, with the river for a boundary. It is true that in the diagram of the surveyor the survey is surrounded by earmarks indicating sand bars. But the oral evidence of the surveyor shows that the survey was intended to be made and was made substantially to the water's edge and that the river was the boundary. In this condition of things new land thereafter formed to said island on either side by recession or accretion, under settled rules of law as applied in the cases heretofore cited, inured to the benefit of the island owner, and we accordingly so hold.

Goddin took the chances of both avulsion and imperceptible wasting away. On the other hand, he purchased the chance of accretion, recession or reliction. There is nothing in the case to fairly indicate that he intended to buy or did buy a limited tract, leaving the title to alluvion, afterwards accreted, in the county to be disposed of and thus hedge him in and away from water ingress and egress by such disposition.

It was not necessary for his patent in terms to convey thereafter accreted land. Such accretion inured to him by operation of law. [Jefferis v. East Omaha Land Co., 134 U. S. 178; St. Louis v. Rutz, 138 U. S. supra.]

In dismissing the matter now in hand, it may be said that the evidence satisfactorily establishes the fact that the land covered by Frank's patent makes a part of Goddin Island, and that Goddin Island sloped from the center elevation down to the river.

(3) Appellant presents the further insistence, somewhat borne out by the evidence, that the surveyor,

surveying the land previous to respondent's patent, miscalculated the superficial area of the irregular geometrical diagram presented to the county court and that it contained 127 acres. Relying on this evidence, and relying further upon the statute which requires a purchaser to pay at least $1.25 per acre for this character of land, it is contended that respondent's patent is void, and, therefore, appellant's grant is left operative. But such infirmity, if infirmity it be, does not appear on the face of respondent's patent and the proceedings leading up to the same. It arises for the first time at the trial from an exceedingly complicated and somewhat uncertain mathematical calculation of two civil engineers introduced as witnesses by appellant. Can such collateral assault on this patent be allowed? We think not. It must be remembered that the genuineness of the patent is not assailed. If, therefore, the irregularity appeared in the very proceedings or in the patent itself, the rule might be different and the patent held void when offered in evidence. [Morgan v. Stoddard, 187 Mo. 323.] But the better doctrine, in cases where the irregularity is made to appear by matter *in pais, dehors* the court record, is that the patent should be avoided by a direct proceeding, and that, while it remains operative and free from direct assault, it may not be overthrown by indirection in a collateral proceeding such as this. [Simpson v. Stoddard County, 173 Mo. 1. c. 458-9.]

In our opinion the judgment should be affirmed and it is so ordered.

All concur.