RALPH F. BIXBY, Appellant, v. MORRIS BACKUES, IDA BACKUES and HAROLD BIXBY.—144 S. W. (2d) 112.

Division One, October 31, 1940.

*James Booth, James L. Anding* and *Leslie B. Hutchison* for appellant.

*H. P. Lauf* and *John O. Bond* for respondent.

CLARK, J.—Plaintiff appeals from a judgment rendered by the Circuit Court of Maries County adjudging title to certain real estate to be in defendants.

This suit was commenced in December, 1938. The amended petition, on which the case was tried, alleges: that plaintiff is the owner in fee and in possession of land in Maries county described as "all the Southeast fractional quarter East of the Gasconade river in Section 4, Township 40, Range 8;" that he has paid all taxes on said land that were ever paid; that he and those under whom he claims have been in the actual possession, had a fence erected around part of the land, and exercised all rights over same ordinarily exercised over land of this character; that defendants have never been in possession or paid any taxes, and have never asserted any right or title, to plaintiff's knowledge, until some time during the year 1938; that any claim of defendants is adverse to plaintiff's title; and prays the court to adjudge the title in plaintiff.

Defendants' answer claims fee simple title and possession in defendants and prays the court to so decree.

A jury was waived and the trial was to the court. Plaintiff (appellant) has set out several assignments of error, stated in different form, but all save one relate to the sufficiency of the evidence to support the judgment. The exception is a general objection to the admission and rejection of evidence, but, as no particular ruling of the court is specified and the point is not briefed, this assignment is abandoned. The case being at law, and not in equity, and no procedural error being pointed out, we are bound by the judgment if there is any substantial evidence in the record to support it. [Frazier v. Shantz Real Estate & Inv. Co., 343 Mo. 861, 123 S. W. (2d) 124.]

Plaintiff offered in evidence a warranty deed, dated September 5, 1928, executed by Lake Hill Park Company, a corporation, to plaintiff and purporting to convey "all the West fractional one-half, East of Gasconade river, in Section 3, Township 40, Range 8," and other land. Plaintiff did not show how this grantor acquired title, but the

deed was admitted without objection and defendants seem to have conceded at the trial and in their brief filed in this court that plaintiff is the owner of the land described in Section 3.

Plaintiff also introduced two plats. The first plat, Exhibit A, is a copy of a survey made by a deputy county surveyor in October, 1937. It shows the Gasconade river entering Section 4 at the south line, a distance of 203½ feet west of the southeast corner of the section; thence the river runs a little east of north to a point 16 feet from the east line, and 792 feet from the south line of the section; thence nearly due north until it turns to the east and passes out of said section into Section 3 at a point 2574 feet north of the south line thereof. This narrow strip between the river and the east line of Section 4, extending north and south a distance of 2574 feet, being 203½ feet wide at the south end and tapering to a point at the north end, containing a little less than three acres, is the land in controversy in this case.

The other plat, Exhibit J, is a copy of the United States Government survey made in 1822. It shows the Gasconade river crossing the south line of Section 4 at a point 148½ feet west of the southeast corner of said section, thence running in a northeasterly direction and passing into Section 3 at a point 453 feet north of the southeast corner of Section 4. Thus it shows a triangular tract of land, containing about three-fourths of an acre, on the east side of the river in the southeast corner of Section 4. This is a part of the three acre tract in controversy.

■ An examination of the two plats indicates that between 1822 and 1937 the river shifted its course to the west, thereby increasing the size of the tract in Section 4 on the east side of the river from three-fourths of an acre to about three acres. The evidence shows that this change in the river's course was a gradual, almost imperceptible, change and that the added land was formed by accretion to the shore land. Such accreted land belongs to the owner or owners of the shore land to which it attaches. [Cashion v. Meredith, 333 Mo. 970, 64 S. W. (2d) 670.]

■ Most of the oral testimony offered on both sides is indefinite and inconclusive. The plaintiff seems to have made some effort to prove title by adverse possession, but his evidence falls far short of establishing such possession for the length of time necessary to ripen into title under any section of our statutes. Besides, the allegations of the petition are insufficient to set up title by adverse possession. This is a ground of recovery which must be pleaded. [Sanders v. Johnson, 287 S. W. 427.] Plaintiff's evidence as to possession is to the effect that he enclosed a part of the disputed land with a fence, but did not enclose a small strip on the south side. This fence was afterward cut and rolled back by defendants and they built a fence on part of the land. The evidence does not clearly show that either plaintiff

or defendants held actual possession of the land at the institution of the suit.

The defendants' evidence does not conclusively show that they have ever been in possession of the disputed land although they at one time built a fence on it. They introduced quitclaim deeds as follows: from J. W. Pointer to William G. Pointer, dated August 22, 1914, describing "the southeast fractional quarter *south* of the Gasconade river of Section 4, Township 40, Range 8;" from W. G. Pointer and wife to defendants, dated September 27, 1937, describing "all of the southeast fractional quarter of the southeast fractional quarter that lies east of the Gasconade river in Section *44*, Township 40, Range 8;" from W. G. Pointer and wife to defendants, dated October 4, 1937, describing "the southeast fractional quarter east of the Gasconade river in Section 4, Township 40, Range 8;" from Edward Knecht, dated January 5, 1939, describing the land last mentioned. It was not shown how J. W. Pointer acquired title nor was it shown that any of the parties to these deeds were ever in possession except that some evidence was offered that W. G. Pointer at one time and the defendants at another time had possession of at least a part of the disputed land.

In addition to the deed from the Lake Hill Park Company for the land in Section 3, plaintiff introduced deeds describing the southeast fractional quarter of Section 4, east of Gasconade river, as follows: from Rapin Smithson to Herman H. Schmitz, dated March 28, 1868; from Herman H. Schmitz to Maria L. Fitzgibbon, dated February 18, 1870; from Maria L. Fitzgibbon to Matthew C. Ryan, dated April 15, 1884; from Matthew C. Ryan to Mathew H. McNeill, dated October 27, 1886; from M. H. McNeil to Robert Knecht, dated December 24, 1886; from George Arthur Knecht and wife to the plaintiff, dated October 5, 1937.

The disputed land lies immediately west of a part of the land in Section 3 purchased by plaintiff from Lake Hill Park Company and between that land and the Gasconade river. Plaintiff testified that at the time he purchased the land in Section 3 he was told that the river was his west line; that shortly after he received the deed for the land in Section 3 he enclosed a portion of the disputed land with a fence; that in 1931 he was informed that the three-fourths acre tract had never been patented; that he wrote to the United States Land Department and received information that a patent for this tract had been issued to one Smithson; that on investigation he learned that the last record holder of the Smithson title was one Robert Knecht who had not been heard from for many years; that plaintiff then procured the quitclaim deed above mentioned from George Arthur Knecht, who plaintiff says is one of several nephews of Robert Knecht; that plaintiff had all the disputed land placed on the tax books and paid taxes for the year 1938. So far as the record

shows, this is the only year in which any taxes were paid on the land. As before stated, neither the pleadings nor the evidence authorizes a decree of title in plaintiff for any of the disputed land on the ground of title by adverse possession and limitations. That portion of the disputed land lying north of the original three-fourths acre tract appears to have been formed many years ago by accretion to the land afterward purchased by plaintiff from Lake Hill Park Company. As to that portion of the disputed land, we think plaintiff is entitled to a decree. The deed from Lake Hill Park Company did not contain any exception or reservation as to accretions. It therefore presumptively carried with it all accretions previously formed to the land described, even though such accretions extended across the section line mentioned in the deed. [Gorton v. Rice, 153 Mo. 676, 55 S. W. 241.] This presumption is strengthened by the fact that the deed indicates the river as the boundary. [Shelton v. Maupin, 16 Mo. 124.]

No title was clearly established to the original three-fourths acre tract and the land accreted thereto. By hearsay, plaintiff proved the issuance of a patent from the government. Also, by hearsay, he proved that his grantor, George Arthur Knecht, was a nephew of the record holder of the title, Robert Knecht. This evidence was admitted without objection by defendants. Assuming that these facts were proved, they fall short of proving that George Arthur Knecht was an heir of Robert Knecht. Under the most favorable construction this deed conveyed only an undivided interest, because plaintiff testified that George Arthur Knecht was only one of several nephews of Robert Knecht. Nor can plaintiff claim this portion of the land as accretions to the land deeded by Lake Hill Park Company, for it was never owned by that company.

Defendants did not plead or prove title by limitations. Nor did they establish a record title. They introduced a deed from a man named Knecht, but they offered no proof that this grantor was related in any degree whatever to the record holder of the title.

From all this it is apparent that the decree of the trial court, adjudging fee simple title in defendants, is entirely without foundation. [Richards v. Coal & Mining Co., 221 Mo. 149, 119 S. W. 953.]

Plaintiff in his brief objects to the correctness of the survey made in 1937 showing the line between Sections 3 and 4, but, as he introduced the plat of this survey and offered evidence as to its correctness, he cannot now complain. [Randolph v. Moberly Hunting & Fishing Club, 321 Mo. 995, 15 S. W. (2d) 834.]

On account of the small amount of property involved, we dislike to remand this case for a new trial and will modify the judgment to conform to the proof. [Section 1063, Revised Statutes 1929, Mo. Stat. Ann., sec. 1063, page 1361; Chilton v. Nickey, 261 Mo. 232, 169 S. W. 978; Johnson v. Ferguson, 329 Mo. 363, 44 S. W. (2d) 650, l. c. 655.]

Accordingly, the judgment is reversed and cause remanded with directions that a judgment be rendered adjudging title in plaintiff to that portion of the land described in his petition which lies north of a point 453 feet north of the south line of said Section 4; that no adjudication be made as to the title to the remaining portion of the land, and that the costs be adjudged against the defendants. All concur.