Frederick DUNLAP and Florence Dunlap,
Respondents,

v.

John H. HARTMAN and Macie Hartman, and Roy Hartman and Minnie Hartman, Appellants.

No. 47629.

Supreme Court of Missouri,

Division No. 2.

Sept. 12, 1960.

David V. Bear, Robert Hines, Sapp & Bear, Columbia, for appellants.

Ralph L. Alexander, Columbia (Alexander, Welliver & Wayland, Columbia, of counsel), for respondents.

BARRETT, Commissioner.

The plaintiffs, Frederick Dunlap and his wife, and the defendants, John and Roy Hartman and their wives, both claiming to own a strip of land consisting of 12.4 acres, the plaintiffs in 1956 instituted this suit to quiet the title. In a general judgment the trial court found the issues for the plaintiffs and accordingly quieted the title. The defendants have appealed and contend that this court should reverse the judgment because (1) "the greater weight of the evidence proved that the land in dispute accreted to Owen Island" (land admittedly owned by the defendants) or (2) "that the great(er) weight of the evidence proved that even though the land in question accreted to plaintiffs' mainland, defendants acquired title to it by limitation." The 12.4 acres is an irregularly-shaped tract adjacent to and south of the M.-K.-T. Railroad right of way in the south half of section 25 in Boone County, and it is north of and adjoins a tract of land, formerly an island, owned by the defendants. And, as the parties have repeatedly stated in their briefs, the crux of the case is whether the 12.4 acres accreted to the mainland adjacent to the railroad right of way, in which event it belongs to the plaintiffs, or whether it accreted to the island and, therefore belongs to the defendants. In the 1920s or earlier the course and main channel of the Missouri River washed away the greater part of the land in the south half of section 25 that once adjoined the railroad right of way. In time, probably by reason of dikes, the channel of the river moved to the south and a towhead formed opposite the right of way and by 1926 became an island consisting of 52.66 acres.

The legal title to the 12.4 acres is in this posture: In September 1928 the Dunlaps purchased a tract of land in Boone County consisting of 347 acres "more or less" from

L. H. Northway—this deed·purported to convey land in section 25 subject to the railroad right of way. In 1929, for a consideration of $10, the Dunlaps got a deed from Isabel Lyda, a descendant of William C. Rickey who once owned the south half of section 25. While this deed described the N½ of the SW¼ of section 25 it said "comprising three acres of land, more or less, the remainder having been removed by the Missouri River prior to this date." In July 1929 for $100 the Dunlaps obtained a deed from Curtis B. Rollins (whose ancestor once owned it) to the NW¼ of the SE ¼ of section 25 "excepting that portion washed away by the river, and subject to the right-of-way of the Missouri-Kansas-Texas Railroad Company." With these deeds or a part of them Dunlap in 1929 obtained a decree in the Circuit Court of Boone County quieting title to land in section 25, including the 12.4 acres, in himself and his wife. This judgment was against certain descendants of former owners. The defendants' title came about on these dates in this manner: In 1926 and in 1935 Boone County patented certain lands including the 52.66 acre island to Carter Owen. Owen died in 1943 and in 1949, for the recited consideration of "$10.00 and other valuable considerations," his sole heir purported to convey to the Hartmans a tract of land consisting of 87.25 acres which includes what was formerly the island as well as the 12.4 acres along the railroad right of way. Thus, unless the 12.4 acres accreted to the island rather than to the mainland, it is obvious that the Dunlaps have the prior and superior legal title to the land in dispute.

With respect to accretions an early photograph shows Owen Island formed in the Missouri River and between the island and the mainland there is an arm or channel but the main course of the river is south of the island. In this photograph a bar is forming north and west of the island and on the photograph Dunlap indicated the east and west lines of the land he claimed south of and adjacent to the right of way. A later photograph indicates that the island has grown and the arm or channel adjacent to the right of way has become less distinct in places and in other places it has been almost obliterated. In February 1935 the then county surveyor made "survey No. 7276" for Carter Owen and Boone County and as we understand this record this survey and the same surveyor's testimony on this trial had considerable weight with the trial judge. This 1935 survey shows the area then north of the·main channel of the river to be 87.25 acres but, as the engineer said, it shows a slough between the island and the railroad right of way and the slough is south of but alongside the 12.4 acres. The engineer said, "I think there was some water in the slough but not very much, towards the north part of the slough." In later aerial photographs the line of the slough is not so distinct, it has become a swale or depression but it forms the southern boundary of the 12.4 acres adjacent·to the railroad right of way. Mr. Dunlap told about his acquisition of the deeds and his former quiet title suit and pointed out on the photographs and plats the 12.4 acres and while some of his testimony is vague and not too convincing he testified that when he first began watching the island was there and the slough was there. He testified that willows and cottonwoods grew on each side of the slough, that the slough gradually filled up from both sides and has now been cleared and is subject to cultivation but the line or depression of the slough is plainly visible.

The defendants' evidence tended to show that the course of the river had once been against the railroad right of way, that it had washed away all of the land south of and adjacent to the right of way. In short it was the defendants' claim and their evidence tended to support it that the accretion was to the island and finally that the "point of contact" was the railroad right of way and not the slough. Moore v. Farmer, 156 Mo. 33, 56 S.W. 493; Annotation 54 A.L.R.2d 643. The difficulty with the appellants' contention that "the

greater weight of the evidence proved that the land in dispute accreted to Owen Island" and not to the mainland is that the weight of the evidence depends on its credibility. Whether the point of contact of the accretions was the railroad right of way or the slough, even the interpretation of the photographs and plats, depends on whether one believes and accepts the testimony offered by the plaintiffs or that offered by the defendants. The essential issue was one of fact and upon this record it may only be said that the testimony with respect to accretion was conflicting and after due deference it may not be said that the judgment of the trial court was clearly erroneous and should therefore be set aside. V.A.M.S., Sec. 510.310, subd. 4; Hamburg Realty Co. v. Woods, Mo., 327 S.W.2d 138, 153–154; Erickson v. Greub, Mo., 287 S.W.2d 873, 876. Upon their facts and the findings of the trial courts compare Hamburg Realty Co. v. Woods, supra; Curry v. Crull, 342 Mo. 553, 116 S.W.2d 125; Point Prairie Hunting & Fishing Club v. Schmidt, Mo., 44 S.W.2d 73 and Dumm v. Cole County, 315 Mo. 568, 287 S.W. 445; Hauber v. Gentry, Mo., 215 S.W.2d 754.

And so it was also with the issue of adverse possession, the defendants had some semblance of legal title and their proof tended to show that they had entered upon the 12.4 acres and exercised some dominion over it. V.A.M.S., Sec. 516.040. One witness claimed to have rented and farmed what had once been an island as a tenant of Mrs. Owen in 1946. He said it wasn't an island then but was attached to the mainland and as to its northern boundary Mrs. Owen had told him, "Well, she just said that the ground was down there and she said 'You'll just have to go down and pick out what you want to put in and farm it.' She told me it was close in there towards the railroad and

went to the water's edge and wherever the water was, was the amount of land there was." The defendants testified that since their purchase of the island in November 1949 (this suit was filed in 1956 and tried in 1958) they had claimed the railroad right of way as their property boundary line. They claim to have started clearing the 12.4 acres in 1949 and that subsequently they farmed it. They assert that they have paid the taxes on the 12.4 acres but the proof was that the land south of the railroad was assessed to them as a part of the 87.25 acres. While their testimony as to clearing and farming the land and paying taxes is some evidence of adverse possession (Himmelberger-Harrison Lumber Co. v. Craig, 248 Mo. 319, 154 S.W. 73; Smith v. Wallace, 343 Mo. 1, 119 S.W.2d 813; Cashion v. Meredith, 333 Mo. 970, 64 S.W.2d 670), in view of the permissibility of other inferences, particularly that their possession of the 12.4 acres may not have been continuous (Brown v. Hartford, 173 Mo. 183, 73 S.W. 140; Allen v. Wiseman, 359 Mo. 1026, 224 S.W.2d 1010), it is not conclusive or so overwhelming that this court may confidently find the fact contrary to the finding of the trial court. Jamison v. Wells, Mo., 7 S.W.2d 347; Bixby v. Backues, 346 Mo. 955, 144 S.W.2d 112.

Accordingly the judgment is affirmed.

BOHLING and STOCKARD, CC., concur.

PER CURIAM.

The foregoing opinion by BARRETT, C., is adopted as the opinion of the Court.

LEEDY, P. J., EAGER and STORCKMAN, JJ., and HUNTER, Special Judge concur.